FRANCESCHI ET AL., DEMANDANTES Y APELADOS *v.* TRUJILLO & MERCADO, DEMANDADOS Y APELANTES.

APELACIÓN procedente de la Corte de Distrito de Ponce en pleito sobre nulidad de ejecución y reivindicación de finca rústica con sus rentas y utilidades.

No. 1521.—Resuelto en junio 28, 1918.

QUIEBRA—LEY DE ENJUICIAMIENTO CIVIL ANTIGUA—CADUCIDAD DE LOS JUICIOS EN LA PRIMERA INSTANCIA.—De acuerdo con la Ley de Enjuiciamiento Civil que empezó a regir en Puerto Rico en 1886, con el Real Decreto de octubre 27 de 1885 y con el artículo 1044 del Código de Comercio de 1829, no podían considerarse caducados los autos de una quiebra por el hecho de que quedaran paralizados, si la causa de la paralización era independiente de la voluntad de las partes, como sucede en el presente caso.

BIENES IN CUSTODIA LEGIS—CAPACIDAD PARA EJERCITAR ACTOS DE DOMINIO SOBRE LOS MISMOS—DERECHOS DE LOS CAUSAHABIENTES DE LOS QUE FUERON DUEÑOS DE LOS MISMOS.—Cuando por la declaración de quiebra de una persona, corporación o sociedad mercantil eran ocupados sus bienes por un depositario judicial, que de acuerdo con la Ley de Enjuiciamiento Civil de 1886 tenía que nombrar como nombró en este caso con tal fin el juez hasta que en la primera junta de acreedores fuera nombrado el síndico de la quiebra, dichos bienes desde la fecha de su ocupación por el depositario judicial, quedaban *in custodia legis.* Y así quedó en el presente caso la Hacienda Rufina, hasta que diez años más tarde dicha hacienda fué ocupada y rematada para el pago de los acreedores hipotecarios de los quebrados, quienes no podían reclamar esa finca, por estar inhabilitados para ejercer actos de dominio y por estar ocupada por el juzgado. Y no pueden en su consecuencia sus herederos o causahabientes pedir hoy lo que sus causantes no podían reclamar entonces.

Los hechos están expresados en la opinión.

Abogado de los apelantes: Sr. *Antonio F. Castro.*

Abogados de los apelados: Sres. *José Tous Soto* y *Frank Antonsanti.*

EL JUEZ ASOCIADO SR. ALDREY, emitió la opinión del tribunal.

La sociedad mercantil Antonsanti & Franceschi, compuesta por los socios don Francisco Antonsanti y don J. Angel Fran-

ceschi, que giraba en el pueblo de Guayanilla hipotecó en el año 1884 su ''Hacienda Rufina'' a favor de don Dionisio Torres Figueroa para garantizarle que le pagaría la cantidad de $28,000 de la moneda comercial entonces corriente, cuyo último plazo de pago vencería en el año 1888.

Un año después dicha mercantil se presentó en quiebra y fué declarada en tal estado por el Juzgado de 1ª. Instancia de Ponce por auto de 12 de junio de 1885, en el que además se decretó la ocupación judicial de todas las pertenencias, bienes, libros, documentos y papeles de los quebrados, se nombró depositario a Félix Tristani y fué señalado día para la junta de acreedores, en la que según la ley debía hacerse el nombramiento de los síndicos de la quiebra. El comisario y el depositario nombrados tomaron posesión de sus cargos y el último se incautó de los bienes de la sociedad quebrada, entre los que se encontró la hacienda ''Rufina.''

En el año 1895 los herederos de don Dionisio Torres Figueroa reclamaron judicialmente el pago del crédito hipotecario debido por Antonsanti & Franceschi y tramitaron el juicio ejecutivo con citación del depositario de la quiebra Sr. Tristani, en cuyas manos continuaba la finca como depositario de la quiebra. Vendida en ese procedimiento la hacienda Rufina para pagar a dichos herederos, fué adjudicada en subasta pública judicial a don Mario Mercado, como apoderado de don José Trujillo Pizá; posteriormente la finca llegó a ser propiedad de la sociedad Trujillo & Mercado y hoy es de la sociedad Mario Mercado e Hijos.

Veinte años después, los herederos de los dos socios que constituían la mercantil quebrada reclamaron judicialmente la entrega de dicha hacienda con los frutos producidos desde su venta en subasta pública, ascendentes según ellos a unos $400,000 fundándose en que el ejecutivo que culminó en esa venta se siguió con el depositario de la quiebra Sr. Tristani que no tenía la representación en juicio de la sociedad demandada. Este pleito terminó por sentencia de la Corte de Dis-

trito de Ponce que declaró nulo el juicio ejecutivo seguido por los herederos de don Dionisio Torres Figueroa; nulas la venta de la hacienda "Rufina" y su inscripción en el registro de la propiedad, así como las posteriores que se han hecho; ordenó que la finca fuera restituída a los demandantes y negó la devolución de los frutos producidos por ella. La apelación que Marío Mercado e Hijos establecieron contra esta sentencia es la que motiva el presente recurso.

El primer fundamento que los apelantes alegan para pedirnos que revoquemos la sentencia recurrida es que la corte inferior cometió error al estimar que los demandantes tienen capacidad legal para demandar.

Aunque los apelantes tratan extensamente la cuestión de que declarada en quiebra la sociedad Antonsanti y Franceschi quedaron sus socios inhabilitados para administrar los bienes de la sociedad y para ejecutar actos de dominio, así como que no llegaron nunca a ser habilitados, ni podían haberlo sido, sin embargo la verdadera cuestión a resolver en este caso no es esa, ya que los demandantes no alegan ni sostienen que sus padres fueron rehabilitados en los autos de quiebra sino que por haber quedado sin tramitación dichos autos desde 1888 caducó la instancia y en consecuencia quedó sin efecto la inhabilitación de sus padres, por lo que pueden reclamar como herederos suyos la "Hacienda Rufina." En oposición a esas afirmaciones de los apelados, sostienen los apelantes:

(a) Que no se ha probado que los autos de la quiebra quedaran paralizados y sin curso desde noviembre de 1888, o desde cualquiera otra fecha anterior a la iniciación del juicio ejecutivo;

(b) Que se ha demostrado que los autos estaban en curso el día en que se inició el procedimiento ejecutivo;

(c) Que era necesaria una declaración especial de caducidad, y que tal declaración nunca se hizo por el tribunal, y

que tal declaración tenía que hacerse en los autos mismos de la quiebra;

(*d*) Que la declaración de caducidad no procedía; y

(*e*) Que la caducidad no es motivo de rehabilitación.

Para poder resolver estas cuestiones es necesario que previamente establezcamos algunos hechos que resultan de las admisiones y pruebas en este pleito.

La junta de acreedores convocada por el juez, en la que debían ser nombrados los síndicos de la quiebra, no llegó a celebrarse, por distintos motivos, en los tres señalamientos que se hicieron, siendo el último para el día 1°. de mayo de 1886. En tal estado las cosas y habiendo sido vendidos ciertos bienes de la quiebra para atender a los gastos de ella, solicitaron los quebrados que se anulasen esas ventas y en 18 de febrero de 1888 acordó el juzgado que se tramitase ese incidente de nulidad, pero que una vez resuelto se convocase a los quebrados y a los acreedores a una comparecencia para ponerse de acuerdo sobre la elección del procedimiento a que debiera ajustarse la quiebra en adelante. En 1°. de enero de 1886 había comenzado a regir una nueva ley de procedimientos y el Real Decreto de 27 de octubre de 1885 ordenaba a los jueces que convocaran a las partes a una comparecencia para acordar por unanimidad en los casos que estaban en tramitación si querían que se rigieran por la nueva ley. El incidente de nulidad fué resuelto en 3 de marzo de 1888 sosteniendo las ventas hechas, pero el día para la comparecencia dicha no fué fijado. En 20 de febrero de 1886 había resuelto el juzgado a la petición de los quebrados de que se señalara nuevo día para la junta, que cuando se celebrara la comparecencia para elegir el procedimiento se proveería a lo que se pedía.

Para esa época algunos de los bienes muebles habían sido vendidos, como hemos dicho, las haciendas "Faro" y "Colombano" habían salido de la masa de la quiebra desde 1885 por

ejecuciones seguidas contra ellas, y la hacienda "Rufina" única que quedaba entonces estaba hipotecada. En verdad los acreedores hipotecarios que no tenían primera hipoteca y los acreedores comunes no pudieron cobrar sus créditos luego que todos los inmuebles salieron de la masa de la quiebra, como reconocieron los demandantes en la alegación 14 de la primera demanda que redactaron en este pleito.

Después de 1888 no volvió a practicarse actuación alguna en la quiebra, aunque la hacienda Rufina siguió en poder del depositario Sr. Tristani hasta que en 1895 fué embargada y ocupada en el ejecutivo de los herederos de don Dionisio Torres.

Mucho se discute entre las partes respecto a si se presentaron en el juicio todas las actuaciones de la quiebra por cuanto el secretario del tribunal en que se hallan archivados esos autos declaró que había también un montón de autos o legajos que no estaban en los índices y que aunque son de asuntos criminales no puede afirmar que entre ellos no haya algún asunto civil. También respecto a si por haber seguido la "Hacienda Rufina" en poder del depositario de la quiebra hasta 1895 ha de entenderse que por este motivo estaba en curso la tramitación de los autos de quiebra y que por consiguiente ha de considerarse probado que estaban en curso dichos autos cuando el ejecutivo contra la "Rufina" comenzó. Sin embargo entendemos que las cuestiones fundamentales no son éstas sino si partiendo del hecho de que la última actuación probada es del año 1888 puede llegarse en este pleito a la conclusión de que la instancia caducó en los autos de quiebra cuatro años después, y también que por tal caducidad desaparece la inhabilitación de los socios de la mercantil que fué declarada en quiebra.

Según el artículo 410 de la Ley de Enjuiciamiento Civil que comenzó a regir en 1886 la caducidad de los juicios cuando se hallaban en la primera instancia tenía lugar a los cuatro

años de no instarse su curso, a menos que (artículo 411) fuera consecuencia de fuerza mayor o de cualquiera otra causa independiente de la voluntad de las partes, y los escribanos (artículos 412) debían dar cuenta para que se decretase de oficio la providencia correspondiente. Si los juicios se hallaban en la escribanía, como se encontraban los de quiebra, ya que no se ha probado que estaban archivados, era necesaria una declaración especial de caducidad de acuerdo con los artículos 412 y 419, declaración que tenía que hacerse indispensablemente en el mismo juicio y no en pleito distinto, porque podía pedirse su reposición (artículo 415); porque afectaba a las partes del mismo y porque producía el efecto de dar por terminado el juicio. 2 Manresa, Comentarios a la Ley de Enjuiciamiento Civil, pp. 274, 275. Sentencias del Tribunal Supremo de España de 3 de abril de 1903, 95 J. C. 572 y 22 de octubre de 1912, 125 J. C. 152.

Pero aunque los demandantes apelados tuvieran razón en el extremo de que en este pleito, en el que no han sido partes los acreedores de la quiebra, puede declararse la caducidad de los autos de quiebra, aún así, no podrían declararse caducados esos autos porque quedaron sin curso por causa independiente de la voluntad de los partes toda vez que el Real Decreto de 27 de octubre de 1885 impuso a los jueces el deber de convocar a las partes a la comparecencia para la elección de procedimiento, y el tribunal que conocía de la quiebra nunca llegó a señalar ese día, siendo esto causa de la paralización de los autos, como lo demuestra el hecho de que se negara a señalar nuevo día para la junta de acreedores hasta tanto se hubiera verificado la expresada comparecencia. Además el juez que conocía de dichos autos tenía el deber por el artículo 1044 del Código de Comercio de 1829 vigente entonces, cuando declaraba la quiebra de decretar también la ocupación de los bienes de los quebrados, de sus libros, papeles y documentos de giros, de nombrar depositario de la quiebra y comisario

de la misma, y señalar día para la junta de los acreedores; providencia que según el artículo 1028 se cumplía a pesar de que los quebrados pidieran su reposición.   Son estas diligencias de tal naturaleza que por estar encomendadas por la ley al juez no producen la caducidad de la instancia si los autos quedaban paralizados.   Por esto en un caso de quiebra en el que, como el que resolvemos, estaba pendiente de celebrarse la primera junta de acreedores en la que habían de ser nombrados los síndicos, se declaró por el Tribunal Supremo de España que conforme el texto y recto sentido del artículo 412 del Código de Enjuiciamiento Civil ''es preciso que la causa de la paralización sea imputable a la negligencia de las mismas partes litigantes por lo cual, como también ha declarado este Tribunal Supremo, y se alega en apoyo del recurso no corren los términos establecidos para la caducidad de la instancia en los bienes universales que se hallen pendientes de las actuaciones que por ministerio de la ley han de practicarse de oficio en interés colectivo de las partes a quienes puedan corresponder los bienes de la herencia, quiebra o concurso, siendo en consecuencia de ello manifiesto en caso de quiebra que estando confiada exclusivamente la acción judicial, aunque su ejercicio no sea requerido por parte alguna, la adopción de las medidas adecuadas para asegurar los bienes del quebrado y convocación de los acreedores hasta que celebrada la primera junta, se constituya la sindicatura que ha de representar a la colectividad, no hay términos hábiles para que la paralización se impute a quienes derechamente pueden esperar esa convocatoria ni, por tanto, para declarar caducada la instancia en su perjuicio.''   96 J. C. 822.

No es contestación a lo expuesto que el juez cumplió convocando a la junta por tres veces y que la ley sólo prevé dos casos en que no se reúna la junta y nada dispone para una tercera o posterior convocatoria porque siendo la voluntad de la ley que la junta de acreedores se celebre lo antes

posible y encomendando esa función al juzgado que conoce de la quiebra, hay que suponer que si por cualquier circunstancia la junta no se celebra, continúa el deber del juez de señalar nuevo día hasta que se verifique.

También se discute si la caducidad de la instancia produce o no la rehabilitación de los quebrados pero no es necesario que resolvamos esa cuestión en este caso ya que no existiendo la caducidad no tenemos que determinar si produjo la rehabilitación.

Por la declaración de quiebra de Franceschi y Antonsanti sus bienes fueron ocupados por el depositario judicial que de acuerdo con la ley tenía que nombrar y nombró con tal fin el juez hasta que en la primera junta de acreedores fuera nombrado el síndico de la quiebra, y desde esa ocupación los bienes de los quebrados quedaron en *custodia legis,* en cuya situación legal fueron tenidos por todos y así permaneció la "Hacienda Rufina" hasta que diez años después fué ocupada y rematada para pagar a sus acreedores hipotecarios. Además, no podían los señores Franceschi y Antonsanti reclamar esa finca por estar inhabilitados para ejercer actos de dominio y por estar ocupada por el juzgado, y no pueden hoy sus herederos pedir como tales lo que sus causantes no podían reclamar. La excepción propuesta por los demandados de falta de personalidad legal en los demandantes para demandar debió ser declarada con lugar.

En vista de esta conclusión no es necesario considerar las otras cuestiones propuestas y por dicho motivo debe ser revocada la sentencia apelada y absolverse a los demandados.

> *Revocada la sentencia apelada y declarada sin lugar la demanda.*

Jueces concurrentes: Sr. Presidente Hernández y Asociado Sr. Wolf.

Los Jueces Asociados Sres del Toro y Hutchison disintieron en la resolución de este caso.